Curia, per

O’Neall, J.
The question, what constitutes an executor de son tort l is a question of law ; but, like all other legal questions depending upon facts, the jury must apply them to the law of the case. As where one possesses himself of the goods of the decqased, for the purpose of taking care of them, the jury must find these facts to be true before they can discharge the defendant *415 from the responsibility arising from his possession. Generally, any act of intermeddling which an executor can rightfully do, such as collecting the assets, selling the property, and paying the debts; or any act which usually evinces a legal control, as using the property as one’s own, or wasting it, is sufficient to constitute an executor de son tort. If a person take possession of the goods of a deceased, with a view to take care of them, and negligently lose them, or suffer them to be destroyed, he would be liable as executor de son tort. These rules are sufficient to establish the liability of the defendants. Mrs. Fogartie was in possession*of a horse belonging to the deceased ; she used him as her own for upwards of a year, suffered him to estray, and did not even atteihpt to reclaim him. Her use of the horse would, in itself, constitute her an executrix de son tort, but when to that is added the fact, that by her negligence that much of the assets of the estate has been wasted,' there can be no doubt of her liability. If she, while a feme sple, made herself an executrix de son tort, it follows that she and her husband are liable in this action. For the tort of the wife before coverture, as well as after, the husband is liable in an action against both. If this was not so, the marriage of the wife would discharge her from any legal liability for her tortious acts before marriage. The act of the party committing a wrong, cannot, of itself, have this effect. But the legal presumption arising from the intermeddling of the wife while sole, is, that she was rightfully executrix ; and upon this legal presumption, the action is brought against husband and wife, as executor and executrix. If she had been rightfully executrix, it would not be pretended that the husband, during coverture, was not liable to the extent pf the assets in her hands as executrix. For her acts as executrix de son tort, he is also liable. Upon the plea of ne unques executors, the question how far the defendants were liable, could not arise. The issue was, are the defendants executor and executrix 1 That depended upon the fact, whether the wife, while sole, had so intermed-dled with the estate, as to make her executrix in her own wrong. Any act of intermeddling, amounting to an ap *416 propriation of the goods of the deceased to her own use, established that issue. The extent of her liability as executrix, could only'be tested by a plea oiplene administravit or plene administravit proeter. Neither of these pleas being pleaded, and the pleas of non as-sumpsit and ne unques executors being found against the defendants, the plaintiff was entitled to a judgment for his damages, to the amount of the note and order and interest.
The objection to the recovery on the order is, that “ the evidence did not sustain the declaration relative to the order.” I have looked into the -declaration, and I cannot discover any difference between the allegata and the pro-bata. The order and indorsement 'are correctly described, with fhe usual. averments of being presented for payment, refusal ta.accept, and notice to the drawer. The evidence establishes the drawer’s a*nd endorser’s signatures, and that , the order was presented and refused to be accepted, and that the drawee had no funds in his hands belonging to the drawer. This dispensed with the necessity of notice to'the drawer ; for having^ no funds upon which he could draw, he. cannot be injured by not being informed that his order was refused acceptance. The case of Treadway vs. Nicks & Johnson, 3 McC. 195, establishes the general rule, that where the defendant drew an order in favor of the plaintiff, the plaintiff must allege and prove, in a suit against the drawer, that he presented the order, and that it was not accepted, or that it was accepted but not paid, and that the defendant had notice of the non-acceptance, or non-payment. This general rule was enough for the decision of that case; and the exception, “ that where the d'rawer has no funds in the hands of the drawee, it is- not ■ necessary to give him notice of the non-acceptance,” was not noticed. Another part of the decision of that case, that a note without the words “ for value received,” will not support a description of one “ for value received,” was relied on in the argument. That was a clear variance between the proof and description, but it cannot apply to this case, for there is no such variance between the order *417 in evidence and that described in the declaration. It is described as it really is. If the idea is, that it is not a good bill of exchange without the words, for value received, that is clearly a mistake ; for any positive and unconditional order for the payment of a certain sum of money, is a bill of exchange. If, however, the argument is, that without the words, for value received, it is necessary to allege and prove a consideration, it proceeds upon a mistaken notion of the law. Every parol contract, at common law, required a consideration to be alleged and proved, but to this rule bills of exchange and promissory notes are. exceptions; they furnish in themselves an implied legal consideration, which throws upon the drawer or maker the burthen of proving a want of consideration.
The motion for a new trial is dismissed.
Johnson, J. concurred.